## Shallcross et al., Receivers, v. North Branch-Sedgwick Building & Loan Association

*Saul, Ewing, Remick & Saul,* for plaintiffs.
*Hepburn & Norris,* for garnishee.

SMITH, P. J., December 12, 1935.—This matter comes before us on a rule to dissolve an attachment and restrain execution.

The plaintiffs, on June 5, 1935, obtained a judgment against the defendant in the amount of $2,201.29 for want of an affidavit of defense upon a written agreement made and entered into by them on May 20, 1931, and attached the funds belonging to the defendant in the First National Bank of Philadelphia in August 1935. The defendant contends that this attachment should be dissolved. The facts are as follows:

On October 3, 1924, one Rebecca V. Dougherty, the owner in fee of premises 1750 North Ninth Street, in the City of Philadelphia, made and delivered to the Philadelphia Company for Guaranteeing Mortgages her bond in the sum of $3,600, conditioned for the payment of the just sum of $1,800 three years from that date, secured by a mortgage upon said premises. The plaintiffs are receivers for the Philadelphia Company for Guaranteeing Mortgages. The North Branch-Sedgwick Building & Loan Association, defendant, subsequent to the creation of said bond and mortgage, became the owner of the said premises 1750 North Ninth Street subject to the first mortgage of the plaintiffs. On May 20, 1931, when the said mortgage on said premises was overdue and unpaid, the defendant made an application to the Philadelphia Company for Guaranteeing Mortgages for an extension thereof for a period of two years from October 3, 1930. This extension was granted and an agreement in writing entered into between the parties wherein it was provided, inter alia, that the defendant make prompt payment of the interest and principal of the said bond so secured when and as the same respectively should fall due, together with all taxes and water rents assessed and fire insurance. The defendants failed to pay the taxes and water rents assessed against the said premises for the years 1931 to 1935, inclusive, and to make certain repairs as directed by the department of health, so that

municipal and tax liens against said premises are in excess of $700. When the defendant refused to comply with the terms of the written agreement or to make payment as it covenanted to do, an action in assumpsit was brought against it on the written agreement.

The defendant made no defense to this action but when its funds were attached in a bank on the judgment, it invoked the protection of section 1 of the Deficiency Judgments Act of July 1, 1935, P. L. 503. Section 1 reads as follows:

"Be it enacted, &c., That in all cases where a bond and mortgage, or any other obligation securing or guaranteeing the payment thereof, is or has been given for the same debt, the real property, bound by such bond and mortgage, shall first be proceeded against and sold on execution, and the amount of the deficiency judgment ascertained, as hereinafter provided, before any other real property of the mortgage debtor may be attached, levied on or sold for the debt secured by such bond and mortgage, and before any property, real or personal, of any such other person may be sold for the debt secured by such bond and mortgage."

It appears clear that the legislature, having knowledge of the unstable condition of the real estate and security markets, intended to throw a protecting arm about the mortgagor or obligor to prevent his property from being sold at a time when there are no ready purchasers able and willing to pay a fair value therefor. This act does not impair the obligation of contract: it merely regulates the remedies given to enforce it. It does not suspend or delay the obligation of contract: it merely supplies an equitable remedy considering the exigencies of an extraordinary economic condition. Its definite purpose is to prevent the sale of property at a price that is unfair and inequitable. It cannot be contended that, where the obligor on a bond is in possession of cash funds, he is excused from his obligation of contract, and that an obligee must first apply himself to what may be a fruitless sale

of real estate, with its incident legal expenses, before being able to attach funds belonging to the obligor. To hold otherwise would be in derogation of the common law. It is hornbook law that acts in derogation of the common law must be strictly construed.

The construction of the Deficiency Judgments Act as contended by the defendant has no relation to the specific terms of the act or the purpose for which it was passed. In the case at bar the defendant for a good and valuable consideration entered into a written agreement to pay a definite sum at a date certain. It has been guilty of a failure to fulfil the terms of this agreement. Under no construction of the act of assembly can it prevent the plaintiffs from attaching its funds in the hands of the First National Bank of Philadelphia.

### Decree

And now, to wit, December 12, 1935, it is ordered and decreed that the rule to dissolve the attachment is dismissed.